# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS DUKES,<br> Plaintiff, | : CIVIL ACTION<br>:<br>: No. 09-3869 |
| v. | : |
| CATHERINE PAPPAS, Senior Trial Counselor,<br>Securities and Exchange Commission., *et al.*,<br> Defendants. | :<br>:<br>:<br>: |

**MEMORANDUM**

YOHN, J.                                     February 17, 2010

  Plaintiff, Marcus Dukes, a prisoner, has filed a pro se civil rights complaint pursuant to (1) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) 42 U.S.C. § 1983; and (3) the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Plaintiff sues the following defendants: (1) Catherine Pappas, Katy Cody, and Amy Greer, attorneys employed by the Securities Exchange Commission ("SEC"); (2) Kevin Delacy, an SEC accountant; (3) Lucy Cardwell, identified in plaintiff's complaint as "Lucy Caldawell," a Maryland Assistant Attorney General employed in the Maryland Securities Division;[1] (4) J. Joseph Curran Jr., the Attorney General of Maryland; (5) the Financial Industry Regulation Authority ("FINRA"), a federal agency; (6) Mimi Lee, a FINRA attorney; and (7) the United States. Plaintiff sues all individual defendants in their official and individual capacities. Plaintiff

---

[1] The complaint merely describes Cardwell as an employee of the Maryland Securities Division. Because Cardwell's position is relevant to the viability of plaintiff's claims against her, I take judicial notice of the fact that she is an Assistant Attorney General of Maryland. *See* Maryland Attorney General, http://www.msa.md.gov/msa/mdmanual/08conoff/attorney/html/06ag.html#consumer. No Maryland official by the name of Caldwell appears to exist.

alleges that defendants "conspired in the spring and summer of 2001 to destroy [plaintiff's] business, Financial Warfare Club, Inc. ["FWC"], and to destroy the business reputation of the plaintiff." (Am. Compl. ("Compl.") ¶ 1.) To this end, defendants allegedly "falsified documents, manipulated records, provided perjured testimony in Federal Court and violated the plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment Rights." (*Id.*) Plaintiff also alleges that defendants targeted him for investigation and prosecution as a result of his race and the race of FWC members. Plaintiff claims that, as a result of defendants' misdeeds, (1) he was wrongfully convicted for mail fraud, (2) a civil judgment was obtained improperly against him and his companies, and (3) his companies lost value, resulting in financial losses on the part of plaintiff and his clients.

Because plaintiff proceeds *in forma pauperis*, the court has authority under 28 U.S.C. § 1915(e)(2) to dismiss the complaint *sua sponte* to the extent that it is frivolous or fails to state a claim. Pursuant to § 1915(e)(2), I will dismiss plaintiff's claims for prospective nonmonetary relief, as plaintiff has not established any basis for standing to pursue such claims and, in addition, has not stated a claim for which such relief may be granted. I will also dismiss such claims that necessarily imply the invalidity of plaintiff's criminal conviction or sentence, as such claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). I will dismiss plaintiff's claims against the United States and FINRA, as plaintiff has failed to comply with the exhaustion requirements of the FTCA. I will dismiss as time-barred those remaining § 1983 and *Bivens* claims arising out of events before July 23, 2006. Finally, having dismissed all of the claims that plaintiff asserts against them, I will dismiss the United States, FINRA, Curran, Delacy, and Lee as parties to this action.

Plaintiff's only remaining claims concern the SEC attorneys' and Cardwell's allegedly misleading or threatening statements to FWC members. Because the complaint fails to specify which, if any, of these statements occurred on or after July 23, 2006, I will direct plaintiff to file a second amended complaint setting forth in greater detail the time, content, and source of each such statement.

**I. Factual Background**

Plaintiff is currently incarcerated for mail fraud and money laundering in connection with his operation of the FWC. He was convicted on June 8, 2005, in the District of Maryland. Plaintiff unsuccessfully appealed his conviction. *United States v. Dukes*, 242 F. App'x 37, 43 (4th Cir. 2007). In a related civil proceeding in the Eastern District of Pennsylvania, the Securities and Exchange Commission ("SEC") obtained a judgment against plaintiff, a co-conspirator, and four companies controlled by plaintiff and the co-conspirator[2] for civil fraud and for failure to comply with the registration requirements of the Securities Act. *SEC v. Fin. Warfare Club, Inc.*, No. 02-7156 (E.D. Pa. Jan. 11, 2008). Plaintiff filed an unsuccessful motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from the judgment, but did not appeal.

Plaintiff also sought relief from his conviction and sentence pursuant to 28 U.S.C. § 2255, which the District of Maryland denied on November 3, 2009. *Dukes v. United States*, No. 09-135, 2009 U.S. Dist. LEXIS 102271 (D. Md. Nov. 3, 2009). The District of Maryland denied a certificate of appealability on January 12, 2010. 2010 U.S. Dist. LEXIS 2559 (Jan. 12, 2010).

---

[2] The FWC was incorporated separately in Maryland, the District of Columbia, and Nevada. All three companies were named as defendants in the civil suit. Also named as a defendant was a related company, Covenant Econet, Inc.

Plaintiff has also requested a certificate of appealability from the Fourth Circuit, which is pending. *See United States v. Dukes*, No. 09-8158 (4th Cir. filed Dec. 3, 2009).

On or around July 23, 2009, plaintiff submitted to federal prison authorities a civil rights complaint alleging that his conviction was the result of perjury and fraud on the part of defendants.[3] The complaint was filed in the Eastern District of Michigan on July 31, 2009. The matter was transferred to this court because a substantial part of the events giving rise to plaintiff's claims occurred in this district. Plaintiff filed an amended complaint in this court on January 7, 2010, setting forth claims for relief pursuant to *Bivens*, § 1983, and the FTCA. For the purposes of this opinion, I will refer to this amended complaint simply as the "complaint." Plaintiff seeks compensatory damages, punitive and exemplary damages, fees and costs, and an injunction "requiring the Defendants to put policies in place that ensure equitable treatment to both minorities but also small businesses instead of the current system that treat non-minorities and large corporations different and better than minorities and small companies." (Compl. 12.)

With his complaint, plaintiff requests leave to proceed *in forma pauperis*. Because it appears he is unable to pay the cost of commencing this action, leave to proceed *in forma pauperis* will be granted. However, much of the complaint will be dismissed as legally frivolous, as discussed in further detail below.

**II. Claims**

A liberal reading of plaintiff's complaint pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), reveals the following claims, for which plaintiff seeks both monetary and prospective relief.

---

[3] Plaintiff signed his complaint on July 23, 2009. Although it is not apparent from the record exactly when plaintiff submitted his complaint to the prison authorities, I will assume for the purposes of this opinion that he did so on the same day.

### A. SEC Defendants[4]

#### 1. SEC Attorneys

Plaintiff alleges that the SEC "[i]n its role as 'gatekeeper' to the public markets has and continues to use numerous tactics and selective investigation to prevent African Americans from owning public companies in majority ownership or control ownership positions." (Compl. ¶ 3.) Plaintiff alleges that this activity violates the Federal Constitution as well as the "civil right act." (*Id.*)

Plaintiff alleges that Greer and Pappas "conspired with the Department of Justice officials to prevent exculpatory evidence acquired by [the] State of Maryland and [the SEC] from being provided to plaintiff in violation of plaintiff's constitutional rights." (*Id.* ¶ 12.) Plaintiff alleges that the SEC also allowed its accountant Kevin Delacy to commit perjury at plaintiff's criminal trial in order to "prevent exposure of the criminal evidentiary fraud." (*Id.* ¶ 5.) "The SEC has filed as late as May 2009 to prevent disclosure of this evidence." (*Id.*) Plaintiff also alleges that Cody "encouraged and guided" Delacy's testimony "with nonverbal communication." (*Id.* ¶ 13.)

Plaintiff alleges that Pappas used plaintiff's criminal conviction, which was allegedly "fraudulently obtained," to "obtain an equally fraudulent civil judgment for over $1 million dollars against the plaintiff, which she has used as both harassment and a retaliatory device in anticipation of this lawsuit." (*Id.* ¶ 14.)

---

[4] The complaint contains allegations against the SEC in general as well as allegations against specific SEC employees. The SEC is not a party to this action. Therefore, where possible, I will read plaintiff's allegations against the SEC in general as referring to the official responsible for the relevant action. Because plaintiff challenges the SEC's conduct during the course of litigation, most of his allegations against the SEC appear to refer to the actions of SEC attorneys, although he does not always mention each one by name.

During the course of the civil proceedings initiated by the SEC, plaintiff alleges that the SEC, due to racial animus against plaintiff and FWC members, refused to settle its civil enforcement action against plaintiff and the FWC at a time when "FWC and its affiliated companies had greater assets than the amount of membership fees paid in by FWC members." (*Id.* ¶ 4.)

Plaintiff alleges that, "during depositions,"[5] the SEC "repeatedly inquired about the plaintiff's belief as stated in his 'Financial Apartheid' speeches, that the SEC was a big part of the obstacle in creating wealth for African Americans." (*Id*. ¶ 2.) According to plaintiff, the SEC did so in order to deny him his "constitutional right to freedom of speech." (*Id.*)

Plaintiff alleges that, sometime shortly after March 2001, "employees of the SEC," along with other defendants, "conspired to change plaintiff's . . . status" in FINRA's Central Registry Database ("CRD"). (*Id.* ¶ 10.) The altered status apparently reflected that plaintiff had been "disbarr[ed]" by FINRA in 1995. (*Id.* ¶ 11.) Plaintiff contends that, to the contrary, there were "no violations listed" in the CRD earlier in 2001 and plaintiff had, at that point, "not operated under FINRA's authority for over 6 years." (*Id.* ¶ 10.) Plaintiff alleges that this modification was "used to persuade FWC members that they were scammed." (*Id.*)

Plaintiff alleges that the SEC "attacked and threatened members, affiliated companies and others in a suc[c]essful campaign to destroy any value remaining accessible to FWC." (*Id.* ¶ 4.) Plaintiff alleges that these threats constituted "discrimination against protected minority groups," *i.e.*, African Americans, in violation of the Constitution and Civil Rights Acts. (*Id.*)

---

[5] Although it is not entirely clear from the complaint itself, it appears that these depositions occurred in connection with the civil enforcement action against plaintiff as the SEC was not a party to plaintiff's criminal proceedings.

### 2. SEC Accountant Kevin Delacy

Plaintiff alleges that Delacy "manufactured a misleading summary audit" and committed perjury at plaintiff's criminal trial. (*See id.* ¶¶ 5, 13).

Plaintiff also alleges that "employees" of the SEC, possibly including Delacy, "conspired to change plaintiff's . . . status" in FINRA's CRD. (*Id.* ¶ 10.)

### B. Lucy Cardwell

Plaintiff alleges that Cardwell "coordinated multiple governmental agency attack in order to overwhelm the plaintiff's legal counsel and cause a collapse of the plaintiff's ability to defend himself in Court and a collapse of the [FWC] and related businesses." (*Id.* ¶ 8.) According to plaintiff, "this conspiracy cost the members, employees and founders of these companies more than several million dollars." (*Id.*)

Plaintiff alleges that the "State of Maryland," possibly including Cardwell, conspired to conceal or destroy exculpatory evidence in plaintiff's criminal trial. (*Id.* ¶ 5.)

Plaintiff alleges that Cardwell "actively initiated and promoted activities designed to cause a 'run on the FWC bank,'" including "witness tampering and spreading misinformation through out the [FWC] membership base." (*Id.* ¶ 7.) Plaintiff also alleges that Cardwell "spread misinformation and panic throughout the [FWC] membership base. Often accusing anyone (members) who didn't agree with her of being "in on the scam." (*Id.* ¶ 9.)

Similarly, plaintiff alleges that Cardwell was involved in a conspiracy to change plaintiff's FINRA registration status in order to persuade FWC members that they had been scammed." (*Id.* ¶ 10.)

Plaintiff alleges that Cardwell "made multiple racist statements both on and off the record about the ignorance and lack of rational thinking in African Americans," including the members

of the FWC. (*Id.* ¶ 6.) Cardwell also "expressed disdain for African American religious traditions and services." (*Id.*) Plaintiff claims that Cardwell "acted on stated prejudice violating the Civil Right and Religious protections guaranteed by the Constitution." (*Id.*)

### C. J. Joseph Curran Jr.

Plaintiff alleges that the "State of Maryland," possibly including Curran, conspired to conceal or destroy exculpatory evidence in plaintiff's criminal trial. (*Id.* ¶ 5.)

Plaintiff also alleges that Curran issued "press releases and conduct[ed] television interviews of March of 2001, which requested [that FWC] members contact Maryland Securities Division where Ms. Caldwell worked." (*Id.* ¶ 9.) Plaintiff appears to argue that this request enabled Cardwell to spread "misinformation and panic throughout the [FWC] membership base." (*Id.*)

### D. Mimi Lee and FINRA

Plaintiff alleges that FINRA conspired with Cardwell and employees of the SEC to change plaintiff's status in FINRA's CRD, which enabled defendants to "persuade FWC members that they were scammed." (*Id.* ¶ 10.)

Plaintiff also alleges that Lee offered perjured testimony at plaintiff's criminal trial related to plaintiff's FINRA registration status. (*Id.* ¶ 11.)

### E. The United States

None of plaintiff's claims specifically mentions the United States. It appears that plaintiff seeks to hold the United States liable for the various acts of the other federal defendants, namely the SEC defendants, Lee, and FINRA.

**III. Standard of Review**

The court shall dismiss an action *in forma pauperis* if, at any time, the court determines that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The frivolousness prong of § 1915(e)(2)(B)(i) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The remaining prongs of the statute, § 1915(e)(2)(B)(ii) and (iii), require courts to apply the same standard as applied when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

In determining whether to the plaintiff has stated a claim for which relief may be granted, the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Nevertheless, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). A complaint may also be dismissed if it is apparent on the face of the complaint that defendants are entitled to an affirmative defense, such as the statute

9

of limitations. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). Before dismissing a complaint pursuant to § 1915(e)(2)(B)(ii), however, the court must allow the plaintiff to amend his complaint, unless such amendment would be inequitable or futile. See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3rd Cir. 2002).

**IV. Discussion**

Plaintiff's allegations appear to fit into the following categories: (1) deprivation of plaintiff's due process rights during his criminal trial; (2) malicious or selective criminal prosecution; (3) malicious or selective civil enforcement; and (4) defamation and interference with business relations, either as a common-law tort or deprivation of some protected interest without due process.[6] Plaintiff alleges that these actions violated plaintiff's rights under the federal Constitution, the Civil Rights Acts, and state tort law.

**A. Plaintiff's Complaint Reveals No Basis for Standing to Seek Prospective Relief**

Plaintiff seeks injunctive relief against all defendants, in the form of "an injunction . . . requiring the Defendants to put policies in place that ensure equitable treatment to both minorities but also small businesses instead of the current system that treat non-minorities and large corporations different and better than minorities and small companies." (Compl. 12.)

---

[6] Plaintiff's allegation that Cardwell made "multiple racist statements" during the course of litigation is not, in itself, actionable. *See, e.g.*, *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *Salley v. Pa. Dep't of Corr.*, 181 F. App'x 258, 266 (3d Cir. 2006); *King v. Ridley Twp.*, No. 07-0704, 2008 U.S. Dist. LEXIS 103153, at *13. (E.D. Pa. Dec. 19, 2008). This allegation may, however, be relevant to plaintiff's allegations that Cardwell's other acts were racially motivated.

Similarly, although plaintiff alleges that the SEC attorney defendants repeatedly inquired about plaintiff's political beliefs during depositions—presumably as part of the SEC's civil enforcement action against plaintiff—and that the SEC "attacked" him in order to deny him his "constitutional right to freedom of speech" (Compl. ¶ 2), plaintiff has not alleged that the SEC's line of questioning during the depositions actually interfered with his ability to express himself. The line of questioning is therefore not a constitutional violation independent from plaintiff's claim for selective or malicious civil enforcement.

Because plaintiff's complaint lacks any allegation showing that he has standing for such a claim, I will dismiss it.

"Article III of the Constitution requires a litigant to allege an actual case or controversy before invoking the jurisdiction of a federal court." *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990) "To establish a present case or controversy in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer *future* injury from defendant's threatened illegal conduct." *Id.* (emphasis added). The "threat of injury must be both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotations and citations omitted).

Plaintiff is currently in prison. He has not alleged that, upon his release, he intends to operate a business that deals in securities or to engage in any other activity that falls within any defendant's regulatory authority. Although it is conceivable that plaintiff will wish to return to the securities business after his release from prison, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).[7]

Even if plaintiff had standing to pursue his claim for injunctive relief, his allegations that defendants have a continuing practice of discrimination do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Mere allegations of misconduct, without a showing that the misconduct was

---

[7] Although plaintiff asserts that he is investigating the possibility of pursuing a class action (Compl. 4), he has neither defined a putative class nor identified any individual class members. Merely alleging the possibility that other plaintiffs may join plaintiff's action, either individually or as a class, is too "conjectural or hypothetical" to confer this court with jurisdiction over this case. *Iqbal*, 129 S.Ct. at 1949.

part of a discriminatory policy or practice, do not establish a claim to injunctive relief in the form of an order to establish nondiscriminatory policies in place.

Plaintiff's complaint contains only "conclusory statements" of discrimination by defendants. Plaintiff asserts that the SEC uses "numerous tactics and selective investigation to prevent African Americans from owning public companies in majority ownership or control ownership positions." (Compl. ¶ 3.) Absent "further factual enhancement," *Twombly*, 550 U.S. at 557, such a "formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The only factual allegations that potentially support plaintiff's argument that the SEC, or any other discriminated on the basis of race are plaintiff's assertions that (1) "FWC was 95% African American" (Compl. ¶ 4); (2) Cardwell, who was not employed by the SEC, made "multiple racist statements" during the course of her investigation of the FWC and "acted upon stated prejudice" (*id.* ¶ 6), and (3) African Americans, "[w]hile approximately 12% of the U.S. population . . . control (through ownership) 0% of the U.S. public companies" (*id.* ¶ 3). These facts are insufficient to support a "reasonable inference that the [defendants are] liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plaintiff has not identified any similarly situated individuals or companies that received more favorable treatment from defendants than plaintiff received. Moreover, although plaintiff alleges that the SEC "maintains [the] status quo" with respect to racial disparities in ownership of public companies he has not provided any factual basis for his conclusion that this disparity is the fault of the SEC. (*Id.*) As a result, plaintiff has failed to state a plausible claim for injunctive relief.

**B. Plaintiff's Claims Relating to his Criminal Proceedings Are Barred by *Heck v. Humphrey*.**

To the extent that plaintiff alleges that defendants wrongfully procured an illegitimate criminal conviction against him and subsequently used that wrongful conviction during

plaintiff's civil trial, plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. at 486-87, and will be dismissed.

In *Heck*, the Supreme Court held that federal courts must dismiss a § 1983 claim that asserts the invalidity of a prior criminal conviction, unless the conviction has already been overturned on appeal, expunged, or called into question through a grant of habeas corpus relief. 512 U.S. at 486-87. In determining whether dismissal is required, the court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487; *see also Stuler v. United States*, 301 F. App'x 104, 106 (3d Cir. 2008) (applying *Heck* rule to federal criminal convictions).

According to plaintiff, the SEC and its employees, Catherine Pappas and Amy Greer, concealed and destroyed exculpatory evidence during criminal proceedings and continue to conceal this evidence from plaintiff. Plaintiff also claims that (1) the SEC intentionally interfered with plaintiff's counsel's ability to defend plaintiff against the criminal charges against him; (2) various individuals, including Mimi Lee and Kevin Delacy, committed perjury at plaintiff's criminal trial, aided and encouraged by the SEC and by SEC employee Katy Cody;[8] and (3) Delacy fabricated evidence used at that trial. Such due process violations would "necessarily imply the invalidity of [plaintiff's] conviction or sentence." However, plaintiff has not demonstrated that his conviction or sentence has been invalidated. As a result, *Heck* bars plaintiff from obtaining monetary relief for such claims unless and until his conviction is set aside.

Plaintiff also alleges that, regardless of the merits of the underlying conviction and civil case, defendants violated plaintiff's civil rights by selectively bringing criminal charges against

---

[8] In addition to the *Heck* bar, Lee and Delacy are immune from suits for damages arising out of their testimony at a criminal trial. *See Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) ("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony.").

him and against FWC on the basis of plaintiff's political beliefs and the race of plaintiff and members of FWC. I read this allegation as an attempt to state a claim for malicious criminal prosecution. Although a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," *see United States v. Armstrong*, 517 U.S. 456, 463 (1996), a defendant who successfully proves a selective criminal prosecution claim is "entitled to a proper remedy" such as reversal of a criminal conviction, *see United States v. Al Hedaithy*, 392 F.3d 580, 606 (3d Cir. 2004). Thus, plaintiff's selective criminal prosecution claim is barred by *Heck* despite the fact that it does not go to the merits of his criminal conviction.

Plaintiff also alleges that the SEC defendants wrongfully invoked the doctrine of collateral estoppel with respect to the facts proven at plaintiff's criminal trial, enabling them to procure a civil judgment against him. Because such use of collateral estoppel would only be wrongful if the criminal conviction were itself somehow flawed, this argument would necessarily imply the invalidity of plaintiff's conviction. As a result, that claim is also barred by *Heck*.[9]

I will therefore dismiss plaintiff's claims for selective criminal prosecution, deprivation of due process during his criminal trial, and misuse of plaintiff's criminal conviction during civil proceedings, without prejudice to refiling if and when plaintiff's criminal conviction is set aside.[10]

---

[9] Plaintiff's claims arising out of some of defendants' conduct during the course of plaintiff's criminal investigation, such as their alleged misleading and intimidation of FWC members, do not necessarily imply the invalidity of his conviction and are therefore not barred by *Heck*, except to the extent that plaintiff claims defendants defamed him by stating facts identical to those proven in plaintiff's criminal trial. Nevertheless, as discussed *infra*, any such claims arising out of events prior to plaintiff's conviction would be time-barred.

[10] Plaintiff has requested a certificate of appealability from the Fourth Circuit regarding his habeas petition.

### C. Plaintiff's Monetary Claims Against the United States and FINRA Are Barred for Noncompliance with the Exhaustion Requirement of the FTCA.

The United States and its agencies are immune from suits for monetary relief unless Congress specifically waives that immunity. *United States v. Mitchell*, 445 U.S. 535 (1980). *Bivens* actions may therefore be brought only against individual federal officers, not the federal government or an agency thereof. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

In enacting of the FTCA, Congress waived sovereign immunity for certain personal injury claims against the United States. However, federal courts do not have jurisdiction over FTCA claims until (1) the plaintiff has presented the claim to the appropriate federal agency within two years of the date the claim accrues; and (2) the agency has either denied the claim or has failed to make a final disposition within six months of plaintiff's presentation of the claim. 28 U.S.C. § 2675(a); *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971) (holding that the FTCA exhaustion requirement is a jurisdictional one). There is no indication that plaintiff has presented any of the instant claims to any federal agency. Because plaintiff has failed to plead a sufficient basis for jurisdiction over his monetary claims against the United States and FINRA, those claims will be dismissed.

### D. Cardwell and the SEC Attorney Defendants are Absolutely Immune from Damages Claims for Selective Civil Enforcement.

Plaintiff alleges that the SEC's civil enforcement action against him was motivated by racial and retaliatory animus on the part of the SEC attorneys and Cardwell. (*Id.* ¶¶ 3, 4, 6, 8, 14.) Plaintiff also alleges that the SEC attorneys unreasonably refused to settle the civil enforcement action against plaintiff. (*Id.* ¶ 4.) These defendants are entitled, however, to absolute immunity from civil suits for damages arising out of any decision to pursue an enforcement action or their

conduct during the pursuit of such an action. In *Butz v. Economou*, the Supreme Court held that federal "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." 438 U.S. 478, 515 (1978). "An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought." *Id.* That discretion "might be distorted if [the official's] immunity from damages arising from that decision was less than complete." *Id.* Moreover, "[t]he defendant in an enforcement proceeding has ample opportunity to challenge the legality of the proceeding," as "[a]n administrator's decision to proceed with a case is subject to scrutiny in the proceeding itself." *Id.* at 515-16. Applying these principles, the district court held on remand that Department of Agriculture officials were immune from suit arising out of their decision to pursue an administrative enforcement action against the plaintiff. *Economou v. Butz*, 466 F. Supp. 1351, 1358-60 (S.D.N.Y. 1979) (applying the Supreme Court's holding to individual defendants).

Like the Department of Agriculture officials in *Butz*, the SEC attorney defendants are charged with deciding which potential enforcement actions to pursue. Although the enforcement action at issue here was civil, the type of discretion exercised by the SEC attorneys is similar to that exercised by a prosecutor. Accordingly, the SEC attorney defendants are entitled to absolute immunity from suit for civil damages arising out of their exercise of discretion with respect to civil enforcement actions.[11]

Arguably, to the extent that Cardwell may have influenced the SEC's decision to pursue a civil enforcement action against plaintiff, she would not be entitled to absolute immunity because

---

[11] Some of the SEC attorney defendants may not have had the authority to decide whether to pursue a civil enforcement action against plaintiff. However, those defendants cannot be sued for selective civil enforcement because such a claim by its nature requires an allegation that the defendant made the decision to pursue civil remedies against the plaintiff.

her position—which was in the Maryland state government—did not authorize her to decide whether the SEC should pursue such an action. By the same token, however, plaintiff has not alleged that Cardwell actually made or improperly influenced that decision. Plaintiff merely states that Cardwell "delivered on her threat of bringing the [SEC] and the Department of Justice in on the case, who according to her would use their (United States Government) "unlimited resources" to run FWC out of business." (Compl. ¶ 8.) As a Maryland Assistant Attorney General, Cardwell enjoyed absolute immunity for her own exercise of prosecutorial discretion, which included the discretion to contact federal authorities for assistance. Cardwell is therefore also entitled to absolute immunity from damages relating to plaintiff's selective civil enforcement claim.

### E. Plaintiff's Claims Arising Before July 23, 2006, Are Time-Barred

The limitations periods for § 1983 and *Bivens* actions are provided by the "general or residual statute for personal injury actions" of the state in which the claim arose. *See Owens v. Okure*, 488 U.S. 235, 250 (1989) (§ 1983); *Brown v. Tollackson*, 314 F. App'x 407, 408 (3d Cir. 2008) (*Bivens*). Plaintiff's claims may plausibly have arisen in Pennsylvania, where plaintiff's civil enforcement proceedings took place and where the SEC defendants are located, or in Maryland, where plaintiff's criminal proceedings took place, where Cardwell is located, and where some of the FWC members lived.[12] The general statute of limitations for personal injury

---

[12] It is conceivable that some of plaintiff's claims arose in still other jurisdictions, such as the District of Columbia and Nevada, in which some of the FWC entities were incorporated, *see Fin. Warfare Club, Inc.*, No. 02-7156, slip op. at 1 (E.D. Pa. Jan. 11, 2006), or in other states in which FWC members resided, *see Dukes*, 242 F. App'x at 42 (noting that plaintiff gave presentations about the FWC "at numerous churches throughout Georgia, Michigan, Ohio, New York, New Jersey, and Alabama"). However, plaintiff's complaint includes insufficient factual allegations from which to determine that any of his claims arose in jurisdictions other than Maryland or Pennsylvania. If plaintiff intends to argue that any of his claims arose outside of Maryland or Pennsylvania, he must so specify in his second amended complaint.

actions in Pennsylvania is two years, *see* 42 Pa. Cons. Stat. Ann. § 5524 (West 2009), whereas the general statute of limitations in Maryland is three years, *see* Md. Code Ann., Cts. & Jud. Proc., § 5-101 (West 2009). The longest limitations period to which any of plaintiff's *Bivens* or § 1983 claims are subject is therefore three years. Because plaintiff filed this action on or around July 23, 2009,[13] he can only recover, at best, for his *Bivens* and § 1983 claims that arose on or after July 23, 2006.

All of plaintiff's claims relating to defendants' alleged alteration of plaintiff's FINRA registration status are time-barred and will be dismissed. The events giving rise to this claim appear to have occurred shortly after March 2001, well before July 23, 2006. (*See* Compl. ¶ 10.) Plaintiff was also clearly aware by the time of his criminal trial that his FINRA record reflected that he had been disbarred, as Lee testified to that disbarment at trial. (*Id.* ¶ 11.) That trial ended on June 8, 2005, over four years before plaintiff filed the instant action.

Plaintiff's claim against Curran is also time-barred and will be dismissed. Plaintiff alleges that Curran made statements to the press and during television interviews in March 2001 requesting that FWC members contact Cardwell, who then "spread misinformation and panic throughout the membership base." (*See id.* ¶ 11.) I will therefore dismiss as time-barred any claims arising out of those events. Because plaintiff asserts no other claims against Curran, I will dismiss him as a party to this action.

---

[13] According to the "prison mailbox rule," a pro se prisoner's pleading is deemed filed when the prisoner submits the pleading to federal prison authorities, not when those authorities file it with the court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (discussing *Houston v. Lack*, 487 U.S. 266 (1988)). Plaintiff signed his original civil rights complaint on July 23, 2009. Although it is unclear when he submitted his complaint to prison authorities, the earliest he could have done so is the date on which he signed the complaint.

18

It is likely that many or all of plaintiff's other remaining claims are time-barred.[14] However, it is not clear from the face of the complaint when some of defendants' conduct took place. For example, it is unclear when Cardwell and the SEC employees made misleading or threatening statements to FWC members or at what stage during litigation plaintiff believes the SEC should have settled its civil enforcement claims. Plaintiff is therefore directed to file a second amended complaint setting forth in greater detail the time at which each alleged event took place. In particular, plaintiff must clarify when the remaining defendants allegedly made misleading or threatening statements to FWC members, and which defendants made each statement.

**F. Plaintiff's Only Remaining Claims Concern Allegedly Wrongful Statements to FWC Members.**

After dismissing plaintiff's claims for prospective relief, his *Heck*-barred claims, his monetary claims against the United States and FINRA, and his claims arising before July 23, 2006, the only claims remaining in plaintiff's complaint concern the SEC defendants' and Cardwell's allegedly defamatory and threatening statements to FWC members. All other defendants will be dismissed as parties to this action. As noted *supra*, plaintiff is directed to amend his complaint to clarify the contents of each statement, when each statement was made, and by whom. I also note that plaintiff is barred under *Heck* from arguing the untruthfulness of any allegations that were necessarily proven in plaintiff's criminal trial. Thus, each allegedly tortious statement must refer to facts other than those underlying his criminal conviction.

---

[14] I note that the statute of limitations will only begin to run on plaintiff's claims for selective criminal prosecution and deprivation of due process during his criminal trial if and when plaintiff's conviction is set aside. *See Heck*, 512 U.S. at 484 (noting that the common-law tort of malicious criminal prosecution provided the "closest analogy" to § 1983 claims of deprivation of due process during trial and favorable termination of criminal proceedings is necessary element of such a claim).

## V. Conclusion

Pursuant to the authority granted by 28 U.S.C. § 1915(e)(2)(B), I will dismiss plaintiff's claims for prospective relief for lack of standing. I will also dismiss plaintiff's claims arising out of his criminal trial and conviction as barred by *Heck v. Humphrey*. I will dismiss plaintiff's claims against the United States and FINRA as unexhausted under the FTCA. In addition, I will dismiss plaintiff's claims against Cardwell and the SEC attorneys for selective or malicious civil enforcement, as these defendants enjoy absolute immunity for prosecutorial and quasi-prosecutorial decisions. I will dismiss as time-barred those claims arising out of events before July 23, 2006. Finally, having dismissed all of the claims that plaintiff asserts against them, I will dismiss defendants Delacy, Curran, Lee, FINRA, and the United States as parties to this action.

Plaintiff's only remaining claims arise under § 1983 and *Bivens* and relate to Cardwell's and the SEC defendants' allegedly misleading or threatening statements to FWC members. Because it is unclear when certain alleged events took place, plaintiff is instructed to file a second amended complaint within thirty days, setting forth with greater specificity the content, time, and which defendant made each particular statement.