# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS DUKES,<br>    Plaintiff, | CIVIL ACTION |
| v. | No. 09-3869 |
| CATHERINE PAPPAS, Senior Trial Counselor,<br>Securities and Exchange Commission., *et al.*,<br>    Defendants. | |

**MEMORANDUM**

YOHN, J.                                                                                                July 20, 2010

Plaintiff, Marcus Dukes, a prisoner proceeding pro se, has filed a second amended civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. Plaintiff sues: (1) Catherine Pappas, Katy Cody, and Amy Greer, attorneys employed by the Securities Exchange Commission ("SEC"); (2) Kevin Delacy, an SEC accountant; and (3) Lucy Cardwell, a Maryland Assistant Attorney General. Plaintiff sues all defendants in their official and individual capacities. Plaintiff's complaint concerns defendants' conduct during and after a civil enforcement action against plaintiff by the SEC and a criminal action against plaintiff by the Department of Justice ("DOJ"), both of which concerned financial fraud. Plaintiff alleges that defendants Pappas, Greer, Cody, and Delacy withheld exculpatory "*Brady*" material during the course of the investigation leading up to his criminal trial and that, because he lacked access to that material, plaintiff was unable to locate or gain possession of certain corporate assets and suffered heavy financial losses. Plaintiff also alleges that defendants Pappas and Cardwell have made and continue to make false

statements about corporations that plaintiff owns and that plaintiff has suffered financial harm as a result of those statements.

Because plaintiff proceeds *in forma pauperis*, the court has authority under 28 U.S.C. § 1915(e)(2) to dismiss the complaint *sua sponte* to the extent that it is frivolous or fails to state a claim. Pursuant to § 1915(e)(2), I will dismiss plaintiff's claims that the SEC defendants withheld *Brady* material from the DOJ, as such claims imply the invalidity of plaintiff's criminal conviction or sentence and are therefore barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, some of plaintiff's claims that the SEC defendants suppressed material evidence are time-barred. I will also dismiss plaintiff's claims that Pappas and Cardwell made false statements about plaintiff's corporations because plaintiff has not alleged conduct that amounts to a deprivation of plaintiff's constitutional rights. Because plaintiff has not stated any other cognizable claims and because plaintiff has already twice been permitted to amend his complaint, I will dismiss plaintiff's second amended complaint with prejudice.

**I. Background**

Plaintiff was convicted of mail fraud and money laundering on June 8, 2005, in connection with his operation of the Financial Warfare Club ("FWC"), Covenant EcoNet, Inc. ("Covenant"), and other related corporations. *See United States v. Dukes*, Crim. No. PJM-03-0133 (D. Md. Dec. 22, 2005 & Oct. 17, 2007). He is currently incarcerated pursuant to a sentence of 108 months imprisonment. *See id.* Plaintiff unsuccessfully appealed his conviction. *United States v. Dukes*, 242 F. App'x 37, 43 (4th Cir. 2007).

Plaintiff sought relief from his conviction and sentence pursuant to 28 U.S.C. § 2255, a request that the District of Maryland denied on November 3, 2009. *Dukes v. United States*, No. 09-135, 2009 U.S. Dist. LEXIS 102271 (D. Md. Nov. 3, 2009). The District of Maryland

declined to issue a certificate of appealability on January 12, 2010. 2010 U.S. Dist. LEXIS 2559 (Jan. 12, 2010). Plaintiff has also requested a certificate of appealability from the Fourth Circuit, a request that was also denied. *See United States v. Dukes*, No. 09-8158, U.S. App. LEXIS 12991 (4th Cir. June 24, 2010).

In a related civil proceeding in the Eastern District of Pennsylvania, the Securities and Exchange Commission ("SEC") obtained a judgment against plaintiff, a co-conspirator, and four companies controlled by plaintiff and the co-conspirator[1] for civil fraud and for failure to comply with the registration requirements of the Securities Act. *SEC v. Fin. Warfare Club, Inc.*, No. 02-7156 (E.D. Pa. Jan. 11, 2008). The SEC filed its civil complaint against plaintiff on September 5, 2002, but the proceedings were stayed after plaintiff's criminal indictment on March 17, 2003. *Id.* According to plaintiff, the SEC assisted the DOJ in the criminal proceedings against plaintiff and at least one SEC employee testified at the criminal trial. After plaintiff's conviction, the SEC moved for summary judgment in the civil matter, relying primarily on collateral estoppel from the criminal conviction. The trial court granted the SEC's motion for summary judgment as unopposed. *Id.* Plaintiff filed an unsuccessful motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from the judgment, but did not appeal. *Id.* After the judgment became final, plaintiff filed a post-judgment motion to "preserve evidence," a motion that the trial court denied. *See id.*

On or around July 23, 2009, plaintiff submitted to federal prison authorities a civil rights complaint alleging that his conviction was the result of perjury and fraud by state and federal

---

[1] The FWC was incorporated separately in Maryland, the District of Columbia, and Nevada. All three companies were named as defendants in the civil suit. Covenant was also named as a defendant.

employees.[2] The complaint was filed in the Eastern District of Michigan on July 31, 2009. The matter was transferred to this court because a substantial part of the events giving rise to plaintiff's claims occurred in this district. Plaintiff filed an amended complaint in this court on January 7, 2010, setting forth claims for relief pursuant to *Bivens*, § 1983, and the FTCA. I dismissed the complaint in part as frivolous pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff's only remaining claim concerned allegedly misleading or threatening statements to FWC members. Because it was unclear which defendants had made those statements and whether those statements were made within the applicable limitations period, I directed plaintiff to file a second amended complaint with a more specific statement of the facts underlying his remaining claim. *See Dukes v. Pappas*, No. 09-3869, 2010 U.S. Dist. LEXIS 14375 (E.D. Pa. Feb. 17, 2010). Plaintiff filed a second amended complaint on April 22, 2010.

In addition, on March 5, 2010, plaintiff submitted a FOIA request to the SEC seeking release of its records concerning him and the FWC. The SEC initially denied that request under a FOIA provision that protects from disclosure "records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement activities." (Pl's 2d Am. Compl. ("SAC") Ex. E.) Plaintiff filed an administrative appeal of the FOIA denial and the SEC remanded the matter to the FOIA officer after determining that the law enforcement exemption no longer applied. (*Id.* Ex. F.) As of April 22, 2010, plaintiff had not received any documents pursuant to his FOIA request. (*Id.* ¶ 9.)

---

[2] Plaintiff signed his complaint on July 23, 2009. Although it is not apparent from the record exactly when plaintiff submitted his complaint to the prison authorities, I will assume for the purposes of this opinion that he did so on the same day.

4

## II. Standard of Review

The court shall dismiss an action *in forma pauperis* if, at any time, the court determines that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The frivolousness prong of § 1915(e)(2)(B)(i) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The remaining prongs of the statute, § 1915(e)(2)(B)(ii) and (iii), require courts to apply the same standard as applied when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

In determining whether the plaintiff has stated a claim for which relief may be granted, the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Nevertheless, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). A complaint may also be dismissed if it is apparent on the face of the complaint that defendants are entitled to an affirmative defense, such as the statute

of limitations. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). The pleadings of pro se litigants, however, are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**III. Discussion**

In his second amended complaint, plaintiff asserts two general causes of action. Plaintiff's first claim asserts that the SEC defendants violated his right to view material exculpatory (*Brady*) evidence by failing to turn over to the criminal prosecution team a computer spreadsheet file that the SEC defendants had prepared, which contained a list of "questionable" bank transactions compiled from plaintiff's own bank records. Plaintiff's second claim asserts that defendants Pappas and Cardwell made false statements about FWC-related corporations in an attempt to undermine plaintiff's and FWC members' efforts to recover FWC-related assets.

I conclude that plaintiff's first claim is barred by *Heck v. Humphrey* because an essential element of the claim—suppression of material exculpatory evidence—would, if proven, necessarily invalidate plaintiff's conviction. *See* 512 U.S. at 486-87. Moreover, plaintiff's claims that defendants Delacy and Cody participated in the suppression of evidence are time-barred. I further conclude that, even assuming that any portion of plaintiff's first claim is not barred by *Heck*, and is not time-barred, plaintiff has nonetheless failed to state a plausible claim that the SEC defendants' alleged suppression of the spreadsheet caused plaintiff financial harm. Plaintiff has also failed to state a plausible claim for relief arising out of defendants' allegedly false statements about the FWC-related companies. Those statements did not, as a matter of law, amount to a deprivation of any right under the Constitution or laws of the United States, and plaintiff has not alleged any plausible causal connection between the statements and any alleged financial harm. Because plaintiff has failed to state any plausible claim upon which relief could

be granted and because plaintiff has already twice been permitted to amend his complaint, I will dismiss the second amended complaint with prejudice.

## A. Suppression of Exculpatory Evidence

According to plaintiff, prior to plaintiff's criminal trial the SEC defendants declined to release to the DOJ a copy of an Excel spreadsheet the SEC created listing "suspicious" transactions to and from bank accounts belonging to or controlled by plaintiff. Because the SEC told the DOJ that release of the spreadsheet "could impact negatively on the SEC civil proceedings," plaintiff reasons that the spreadsheet most likely contained information favorable to plaintiff. (SAC Ex. D; *id.* ¶ 5.) Since the criminal proceedings concerned nearly identical questions of fact, plaintiff argues that the information in the spreadsheet would also probably have been favorable to him in the context of the criminal proceedings and that the SEC defendants therefore had a responsibility as government investigative agents to turn over the information to the DOJ so that the DOJ could produce it to plaintiff. (*Id.* ¶ 5 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009)).) The SEC ultimately did provide plaintiff with a summary of bank transactions that it intended to present at plaintiff's criminal trial, *see Dukes*, 242 F. App'x at 49, but plaintiff speculates that the chart presented at trial was a fabrication created by Delacy to "cover up the fact that the original summary was withheld" (*Id.* ¶ 6). Plaintiff alleges that Delacy presented the supposedly fabricated summary at plaintiff's criminal trial and that Cody "prepared" Delacy for his testimony and attempted to "guide" Delacy's testimony during the course of the trial in a further effort to conceal the fact that evidence was withheld. (*Id.*¶¶ 6-7.) Plaintiff argues that the SEC defendants' conduct caused financial harm to him and to FWC members by hindering his efforts to track down and gain possession of assets belonging to FWC-related companies, in particular 20 million shares in

7

Cynet, Inc. ("Cynet") that were allegedly owned by Covenant. Plaintiff further alleges that the SEC defendants have continued to deny plaintiff access to the spreadsheet by refusing to comply with his FOIA requests.³ (*Id.* ¶¶ 8-9.)

**1. Plaintiff's Claims Relating to his Criminal Proceedings Are Barred by *Heck v. Humphrey*.**

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*," a § 1983 or *Bivens* plaintiff must prove that the conviction or sentence has been reversed on direct appeal, called into question through a grant of habeas corpus relief, or otherwise called into question by an executive pardon or award of state post-conviction relief. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis added and internal footnote omitted) (addressing § 1983 claim); *Stuler v. United States*, 301 F. App'x 104, 106 (3d Cir. 2008) (applying *Heck* rule to *Bivens* claim). In determining whether dismissal is required, the court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.

I dismissed similar claims of evidentiary suppression that plaintiff made in his first amended complaint as barred by *Heck v. Humphrey*, as such conduct would, if proven,

---

³ Plaintiff has already raised similar evidentiary concerns in prior proceedings. On direct appeal of his conviction, plaintiff unsuccessfully argued that he was deprived of a fair trial because the government had given him insufficient time to review the summary charts before trial. *Dukes*, 242 F. App'x at 49. On habeas review, plaintiff argued that the summary chart presented at trial contained false information. *Dukes*, 2009 U.S. Dist. LEXIS 102271, at *2-4 n.1. The habeas court did not consider that argument as plaintiff had not raised it until his reply brief. Plaintiff also raised a similar claim in his first amended complaint in this case and I dismissed that claim because its success would necessarily imply the invalidity of plaintiff's criminal conviction. *See Heck*, 512 U.S. at 486-87. I also dismissed a perjury claim against Delacy pursuant to the doctrine of absolute testimonial immunity. *See Dukes*, 2010 U.S. Dist. LEXIS 14375, at *21 n.8 (citing *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001)).

necessarily imply the invalidity of plaintiff's conviction or sentence. *See Dukes*, 2010 U.S. Dist. LEXIS 14375, at *20-23. In his second amended complaint, plaintiff argues that his claim that the SEC suppressed material evidence is not barred by *Heck* because "[p]roving that the defendants illegally withheld evidence and that withheld evidence caused the plaintiff $5,000,000.00 worth of damage does not necessarily invalidate the plaintiff's conviction or sentence" as "[f]urther proceeding[s] would still have to be taken up by another court with issues of fact and law still to be determined." (SAC ¶ 5.) I conclude that plaintiff cannot, as a matter of law, prove that the SEC violated any legal duty to turn over the spreadsheet without also invalidating his conviction.

Plaintiff does not allege that the SEC had any general duty to release information about plaintiff's financial transactions to the DOJ or to plaintiff. No such duty exists. Instead, plaintiff relies on *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Although *Brady* "places the ultimate duty of disclosure on the prosecutor"—in this case the DOJ—other government officials may also be held liable under § 1983 when they "affirmatively conceal material evidence from the prosecutor." *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety*, 411 F.3d 427, 443 (3d Cir. 2005), *overruled on other grounds as stated in Dique v. N.J. State Police,* 603 F.3d 181, 183 (3d Cir. 2010); *Yarris v. County of Delaware*, 465 F.3d 129, 141 (3d Cir. 2006).[4] Plaintiff argues that the spreadsheet that the SEC

---

[4] I note that plaintiff's trial ended on June 8, 2005, *see Dukes*, Crim. No. PJM-03-cr-0133, and that any *Brady* claims based on conduct that occurred before the end of the criminal proceedings are therefore time-barred. *See Dukes*, 2010 U.S. Dist. LEXIS 14375, at *28-31 (holding that plaintiff's claims arising before July 23, 2006, are time-barred). For the sake of argument, however, I will assume for the purposes of my *Heck* analysis that the SEC had a

9

created most likely contained exculpatory evidence and that the SEC defendants deliberately failed to provide a copy of the spreadsheet to the DOJ in order to conceal the spreadsheet from plaintiff.

Plaintiff cannot, however, show that the SEC defendants had any *Brady*-derived duty to provide the spreadsheet to the DOJ without also showing that his conviction was invalid. Evidence is material for the purposes of *Brady*, and therefore subject to mandatory disclosure, "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Because "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict," *id.* at 281, numerous courts inside and outside of this circuit have held that is impossible for a plaintiff to show that the government violated *Brady* without also implying the invalidity of his or her conviction. *See Wells v. Dist. Att'y's Ofc.*, 266 F. App'x 187, 188 (3d Cir. 2008) (per curiam); *Ruiz v. Hofbauer*, 325 F. App'x 427, 431 (6th Cir. 2009); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999); *Henry v. Las Vegas Metro. Police Dep't*, No. 95-16575, 1996 U.S. App. LEXIS 16766, at *2-3 (9th Cir. June 19, 1996); *Gravely v. Speranza*, 408 F. Supp. 2d 185, 190 (D.N.J. 2006).

Plaintiff's reliance on *Grier v. Klem*, 591 F.3d 672 (3d Cir. 2010), is misplaced. In that case, the Third Circuit merely held that "where a prisoner files a § 1983 claim to request access to evidence for DNA testing, that claim is not barred by the principles outlined in *Heck*." *Id.* at

---

continuing duty to turn over potentially exculpatory evidence after plaintiff's conviction. *See Yarris*, 465 F.3d at 137 (contemplating liability for state officer's withholding of exculpatory evidence during the course of post-conviction proceedings).

678.[5] The prisoner in that case did not rely on *Brady* as the source of his entitlement to access to the evidence and did not seek damages for his prior lack of access to it. As a result, the plaintiff did not have to show that the evidence was material and exculpatory in order to prevail.[6] *Id.*; *see also Derrickson v. Del. County Dist. Attorney's Office*, No. 04-1569, 2006 U.S. Dist. LEXIS 51476, at *23 (E.D. Pa. July 26, 2006) (holding that a prisoner's request for post-conviction access to evidence, not based on *Brady*, for the purposes of chemical testing was not barred by *Heck* because the evidence "may just as easily prove inculpatory as exculpatory").

Because plaintiff has not demonstrated that his conviction or sentence has been reversed or called into question as required by *Heck*, his claim for damages arising out of the SEC defendants' alleged withholding of *Brady* material is misplaced. Moreover, plaintiff has not identified any other source of a constitutional duty on the part of the SEC defendants to turn over the spreadsheet. As a result, *Heck* bars plaintiff from obtaining monetary relief for the SEC defendants' failure to release the spreadsheet to the DOJ unless and until his conviction is set

---

[5] The *Grier* court declined to address the question of whether the plaintiff actually had any due process right to access to the evidence for DNA testing. *Grier*, 591 F.3d at 678.

[6] The Third Circuit's decision in *Grier* was based in large part on the Supreme Court's opinion in *Wilkinson v. Dotson*, 544 U.S. 74 (2005). The *Dotson* Court held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82. The Court then proceeded to hold that two prisoners could use § 1983 to seek injunctive relief requiring the state to adopt new parole procedures because "neither prisoner's claim would necessarily spell speedier release." *Id.* at 82. In so holding, the Court distinguished its prior holding in *Edwards v. Balisok*, 520 U.S. 641 (1997), where the "'principal procedural defect complained of . . . would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits'" and thus "'necessarily imply the invalidity of the punishment imposed.'" *Dotson*, 544 U.S. at 80-81 (quoting *Balisok*, 520 U.S. at 646-68). As in *Balisok*, the principal procedural defect that plaintiff alleges—withholding of *Brady* material—would, if established, necessarily imply the invalidity of his conviction. *See Wells*, 266 F. App'x at 188.

11

aside.

**2. Plaintiff's Claims Against Delacy and Cody Are Time-Barred**

Plaintiff alleges that Delacy "prepared a misleading financial summary to cover up the fact that the original summary was withheld." (SAC ¶ 6.) Plaintiff further alleges that Cody "prepared [Delacy] for perjur[e]d testimony and attended the plaintiff's trial in order to 'guide' [Delacy] through testimony in order to further cover up the illegal evidence withholding." (*Id.* ¶ 7.) Plaintiff's criminal trial ended on June 8, 2005. *Dukes*, Crim. No. PJM-03-0133. There was no civil trial. *See* Final J. Order, *Fin. Warfare Club*, No. 02-7156 (E.D. Pa. Jan. 11, 2008). Plaintiff has not alleged that Delacy and Cody had any further involvement after June 8, 2005, in the SEC's alleged decision not to provide the original Excel spreadsheet to plaintiff or to the DOJ. As I noted in my dismissal of plaintiff's first amended complaint, all of plaintiff's claims that arose before July 23, 2006, are barred by the applicable statute of limitations. *See Dukes*, 2010 U.S. Dist. LEXIS 14375, at *28-32. As a result, even if plaintiff's claims against Delacy and Cody were not barred by *Heck*, they would nevertheless be time-barred.

**3. Plaintiff Has Failed to State a Claim upon Which Relief May Be Granted**

Even if plaintiff's claims against the SEC defendants based on their failure to turn over the spreadsheet were not barred by *Heck* or by the statute of limitations, plaintiff has failed to state a claim upon which relief may be granted.

First, plaintiff has failed to allege any duty on the part of the SEC to turn over the spreadsheet in question. According to an internal FBI memorandum that plaintiff has attached to

his complaint, the spreadsheet was a Microsoft Excel document that the SEC itself compiled detailing "all the questionable deposits" to and from a First Union Bank account and Bank of America account belonging to Dukes. Where defendant has independent access to the relevant exculpatory information contained in an internal government report, the government's failure to turn over the report is not a *Brady* violation. *See United States v. Starusko,* 729 F.2d 256, 262 (3d Cir. 1984). Plaintiff was therefore entitled, at most, to access to his bank records, which were the underlying documents from which the spreadsheet was compiled. Plaintiff has never alleged that the SEC defendants deprived him of access to his own bank records. When, on direct appeal from his conviction, plaintiff raised a similar objection to the government's use of the SEC's summary charts in his criminal trial, he acknowledged that he had access to the bank records underlying those charts and instead merely argued that, in failing to turn over the charts in a timely manner, the government had deprived him of an opportunity to check those charts against the bank records. *See Dukes*, 242 F. App'x at 49-50.

Moreover, plaintiff has not alleged any plausible causal connection between defendants' alleged conduct—failure to provide access to the spreadsheet detailing questionable transactions listed in his own bank records—and the financial harm for which plaintiff seeks damages, in particular his inability to secure access to shares of stock in Cynet. According to plaintiff, Covenant acquired the Cynet stock in exchange for the FWC member database and business model, without any cash exchange that could have been reflected in the bank transfers or deposits described in the SEC spreadsheet. (SAC Ex. A, at 2.) Even if the transaction information in the spreadsheet may have potentially proven useful in plaintiff's attempts to track down other assets, plaintiff has not stated a plausible claim that he suffered financial harm as a result of his lack of access to the spreadsheet because, as noted above, plaintiff has not alleged that he lacked access

to his own bank records underlying the spreadsheet. Plaintiff's allegation that the SEC defendants somehow "deprived the plaintiff and FWC members of valuable information that could have been used to re-coup monies contributed to FWC" (SAC ¶ 5) is therefore an "unadorned, the-defendant-unlawfully-harmed-me accusation" that falls short of stating a plausible claim for relief. *See Iqbal*, 129 S. Ct. at 1949.

**B. Pappas's and Cardwell's Statements to the Public**

Plaintiff alleges that Pappas and Cardwell "put forth to the public [the] wrongful and misleading statement that 'none of the three . . . infrastructure companies [involved in the FWC operation] has ever had any employees, contracts, or revenue.'" (SAC ¶ 11.)[7] Plaintiff alleges that Pappas and Cardwell have repeated, and are continuing to repeat, the statement in numerous contexts, including on the SEC's and State of Maryland's web sites. According to plaintiff, "[t]his intentionally is being done to undermine the plaintiff['s] and FWC members['] efforts to recover monies from Financial Warfare Club activities." (*Id.*)

Plaintiff's allegations fail to state a claim upon which relief may be granted. Although plaintiff implies that Pappas's and Cardwell's statements have interfered with his ability to recover FWC-related assets, he has not alleged any plausible causal connection between the statements and his inability to recover those assets. As a result, like his allegations that the SEC defendants interfered with his ability to recover assets, plaintiff's allegations against Pappas and Cardwell fall short of the factual allegations necessary to state a claim upon relief may be

---

[7] According to an affidavit that petitioner has attached to his second amended complaint, one of the infrastructure companies, Global Com InterNetworks ("GCI"), in fact owned a technology equipment system valued at $500,000 that it shared with another company, Metro Broadcasting, pursuant to a revenue-splitting agreement. (*See* SAC Ex. G.)

granted, even under the liberal pleading standard applicable in pro se litigants. *See Iqbal*, 129 S. Ct. at 1949; *Haines*, 404 U.S. at 520-21.

Moreover, to the extent that plaintiff seeks to argue that Pappas's and Cardwell's statements injured his ability to recover assets by harming his business reputation, plaintiff's claims are not cognizable under *Bivens* or § 1983. As the Supreme Court noted in *Paul v. Davis*, the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." 424 U.S. 693, 701 (1976). As a result, "defamatory publications, however seriously they may have harmed [the plaintiff's] reputation," do not give rise to a cause of action under § 1983 or *Bivens* unless, as a result of the government action, "a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 711-12.[8] Thus, due process interests may be implicated when a state official places an individual's name on a list of those who pose a threat to themselves by reason of their "excessive drinking" and forbids the sale of alcohol to individuals on that list, *see Wisconsin v. Constantineau*, 400 U.S. 433 (1971), but no due process interest is implicated when a state official places an individual's name on a list of "active shoplifters" and distributes the list to local businesses, *see Davis*, 424 U.S. at 712. Damage to property rights or interests that "flows from injury caused by the defendant to a plaintiff's reputation . . . may be recoverable under state tort law but . . . is not recoverable in a *Bivens* action." *Siegert v. Gilley*, 500 U.S. 226, 234 (1991).[9] I will therefore dismiss plaintiff's claims against Pappas and Cardwell arising out of

---

[8] Although *Davis* concerned a § 1983 action, the Court noted that its holding applies equally to *Bivens* actions. *See* 424 U.S. at 702 n.5; *see also Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987) (applying *Davis* in *Bivens* context).

[9] Moreover, to the extent that Dukes might seek to argue that his criminal conviction or the civil verdict against him altered his rights or status, he still would not have a claim under § 1983 or *Bivens* because *Heck* bars him from claiming that his criminal conviction resulted from

15

their allegedly wrongful statements to the public.

## V. Conclusion

Pursuant to the authority granted by 28 U.S.C. § 1915(e)(2)(B), I will dismiss plaintiff's second amended complaint as failing to state a claim upon which relief may be granted.

Before dismissing a complaint pursuant to § 1915(e)(2)(B)(ii), the court must allow the plaintiff to amend his complaint, unless such amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3rd Cir. 2002). Because plaintiff has already had two opportunities to amend his complaint to state a claim upon which relief may be granted, I will not grant plaintiff further leave to amend and will instead dismiss the second amended complaint with prejudice.

---

a deprivation of due process. *Heck* also bars plaintiff from attacking the civil judgment against him to the extent that that judgment was based on collateral estoppel from the criminal conviction.